UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JAMI SIRAJ CHOUDHURY,                          Civil No. 06-241 (DWF/JSM)

       Petitioner,

v.                                             **REPORT AND RECOMMENDATION**

R.L. MORRISON, Warden,

       Respondent.

_____

JANIE S. MAYERON, United States Magistrate Judge

      This matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Docket No. 1.)  Petitioner claims that the Bureau of Prisons, ("BOP"), has wrongly determined the date when he should be transferred from prison to a Community Corrections Center, ("CCC").  Respondent has filed a response to the petition, (Docket No. 6), contending that Petitioner's CCC transfer date has been properly determined, and that he is not entitled to any relief in this case.  Petitioner has also filed a Motion to Consolidate his case with the matter of <u>Ragsdale v. Caraway</u>, Civ. No. 05-1596 (MJD/JJG) (D. Minn. Jan. 6, 2006).

      The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Petitioner's CCC assignment date has not been properly determined.  The Court recommends that Petitioner be granted a writ of habeas corpus and that the BOP be required to immediately reconsider Petitioner's CCC assignment date in light of the criteria set forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and .21.  The Court further recommends that Petitioner's Motion to Consolidate be denied.

## I.      BACKGROUND

Petitioner is a prisoner at the Federal Prison Camp in Duluth, Minnesota.  He is serving a 37-month federal prison sentence that was imposed on January 12, 2004, following his conviction in the United States District Court for the Eastern District of Wisconsin for violation of the Arms Export Control Act, 22 U.S.C. §§ 2778(B)(2) and (C) and of 18 U.S.C. § 2.  If Petitioner earns all available good time credits, he will be released from prison on September 17, 2006.  However, he will be eligible for a transfer to a CCC at some time prior to his release date of September 17, 2006.  Petitioner and Respondent disagree about when Petitioner will be eligible for such a transfer.

Respondent contends that Petitioner is not eligible for a CCC assignment until he has only ten percent of his prison term left to serve, which, according to the BOP's calculations, will not occur until June 12, 2006.  (Gov't Response at 3.)  Petitioner has not indicated exactly when he thinks he should be transferred to a CCC, but he objects to the BOP's refusal to even consider an earlier transfer date.  According to Petitioner, the BOP is obligated to review his particular needs and circumstances, and make an individualized determination of whether he should be released to a CCC for a period of up to six months, so as to assure that he "is given ample opportunity re-adjust to society in a truly meaningful way."  (Pet. ¶¶ 15, 16). Thus, Petitioner's habeas corpus petition challenges the process by which the BOP determined his CCC eligibility date.

## II.     DISCUSSION

Before addressing the merits of this case, it is necessary for this Court to address Petitioner's motion to consolidate this case with another case that had been brought in this District, Ragsdale v. Caraway, Civ. No. 05-1596 (MJD/JJG) (D. Minn. Jan. 6, 2006). Without addressing the merits of the motion, this Court denies that motion in light of the fact

that the District Court granted Ragsdale's petition for a writ of habeas corpus on January 6, 2006.  Consequently there is no case with which the instant case can be consolidated.

The Court will now examine the merits of Petitioner's claim that the BOP should be ordered to consider placing him in a CCC prior to October 12, 2006.[1]

A.     **History of CCC Assignments**

Federal law gives the BOP the authority to determine where federal prisoners should be confined.  The applicable federal statute, 18 U.S.C. § 3621(b), provides that:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;

---

[1]   In its response, Respondent indicated that Petitioner had not completed the administrative remedy process to seek review of his CCC eligibility date. (Gov't Response at 4.)  Although the Respondent does not expressly argue for dismissal due to this fact, this Court notes that Petitioner would be excused from exhaustion in this case as such a process would be futile.  See e.g., Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 239 n.2 (3d Cir. 2005) (affirming the district court's holding that because such efforts would be futile, "the purpose of exhaustion would not be served here by requiring [Petitioner] to exhaust his administrative remedies"); Stonecipher v. Caraway, Civ. No. 05-2161 (JRT/JSM) at 3 (D. Minn. Jan. 20, 2006) (Order adopting Report and Recommendation) (concluding that exhaustion would be futile because "Petitioner is challenging a policy that BOP has steadfastly defended").

(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

A different statute, 18 U.S.C. § 3624(c), directs the BOP to give special attention to the housing assignments of prisoners approaching the end of their sentences in order to help them successfully re-enter society upon being released.  This statute provides that:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP understood that a CCC was a "place of imprisonment," and that, pursuant to § 3621(b), a federal prisoner could be assigned to a CCC at anytime during his sentence, although customarily, federal prisoners were sent to CCCs during the last six months of their sentences to meet the transitional requirements of § 3624(c).  But on December 13, 2002, the Office of Legal Counsel ("OLC") of the United

States Department of Justice issued a memorandum declaring that this longstanding interpretation and implementation of the housing assignment statutes was incorrect.[2]

The OLC concluded that the term "place of imprisonment" could not include a CCC assignment, which meant that prisoners could not be assigned to CCCs pursuant to the general housing authority provided by § 3621(b).  Instead, the OLC decided that an inmate could be transferred to a CCC only as part of the pre-release programming mandated by § 3624(c).[3]  According to the Memorandum, federal law prohibited offenders from being assigned directly to half-way houses, even though that practice had been used for many years, in many cases, with the universal approval of U.S. Attorneys, the BOP, and the federal judiciary.

The OLC Memorandum also included a brief reference to the BOP's longstanding practice of assigning federal prisoners to CCCs for the final six months of their sentences.  The Memorandum indicated that § 3624(c) authorizes the BOP to assign a prisoner to a half-way house only for the lesser of (a) the last six months of his sentence, or (b) the last ten percent of his sentence.[4]

---

[2]  The OLC Memorandum Opinion dated December 13, 2002, can be found at 2002 WL 31940146.

[3]  Most of the OLC Memorandum was focused on whether federal offenders could properly be assigned to a CCC immediately after being sentenced, without spending any time at all in federal prison.

[4]  Footnote 6 of the OLC Memorandum Opinion dated December 13, 2002, stated:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section.  The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the term to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

The OLC Memorandum prompted Deputy Attorney General Larry D. Thompson to write his own Memorandum to the Director of the BOP.  That second Memorandum, which is dated December 16, 2002, (just three days after the OLC Memorandum), focused primarily on the question of whether a federal criminal can be placed directly in a CCC prior to the last six months of his sentence.  However, the Thompson Memorandum[5] also included one paragraph addressing the BOP's practice of sending prisoners to half-way houses for the last six months of their sentences.  That paragraph reads as follows:

> The OLC opinion additionally notes that, while BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," there are firm restrictions on such transfers.  Specifically, the transfer may not exceed the lesser of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months.  The OLC opinion concludes that there are no bases for disregarding these time limitations.  (Emphasis in the original).

In response to this paragraph of the Thompson Memorandum, as well as the earlier OLC Memorandum, the BOP immediately changed its policies and practices for assigning prisoners to CCCs.  The BOP announced that on a going forward basis it would exercise its authority under § 3624(c) based on its new understanding of the law -- i.e., that the statute itself allows a prisoner to be placed in a CCC only for the lesser of the last ten percent of

---

[5]  The Thompson Memorandum of December 16, 2002, can be found on the Internet at "http://www.usdoj.gov/dag/readingroom/imprisonment.htm."  The section of that Memorandum that is quoted in the text can be found at p. 2, § II.

his sentence or the last six months of his sentence.

During 2003 and 2004, federal prisoners challenged the BOP's new interpretation of § 3624(c) in numerous federal court cases.  Some courts agreed with the BOP's new understanding and implementation of § 3624(c), but many others concluded that the BOP was wrong.  The issue came before the Eighth Circuit Court of Appeals in <u>Elwood v. Jeter</u>, 386 F.3d 842 (8th Cir. 2004).

In <u>Elwood</u>, the court rejected the BOP's restrictive interpretations of §§ 3621(b) and 3624(c).  The court held that "§ 3621(b) gives the BOP the discretion to transfer prisoners to CCCs <u>at any time during their incarceration</u>."  <u>Id.</u> at 847 (emphasis added).  The court further held that, pursuant to § 3624(c), "the BOP is <u>required</u> to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable[; but] [t]his duty shall not extend beyond the last six months of the prisoner's sentence."  <u>Id</u>. (emphasis added).

In response to <u>Elwood</u>, and the First Circuit's decision in <u>Goldings v. Winn</u>, 383 F.3d 17 (1st Cir. 2004), the BOP re-examined its CCC assignment policies and promulgated new Rules on the subject.  The new Rules, which became effective on February 14, 2005, ("the February 2005 Rules"), provide as follows:

### § 570.20 What is the purpose of this subpart?

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community

confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

**§ 570.21 When will the Bureau designate inmates to community confinement?**

(a) <u>The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months</u>.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20 and .21 (emphasis added).

Pursuant to the February 2005 Rules, the BOP will no longer assign any prisoner to a CCC or equivalent housing assignment until the prisoner reaches the final ten percent of his sentence, not to exceed six months. Thus, even though the BOP now apparently recognizes that it has the statutory authority to assign a prisoner to a CCC at any time, the BOP has determined, as a matter of agency policy, that no prisoner will ever be assigned to a CCC before reaching the final ten percent of his sentence. As one federal district court recently observed: "In practice, the effect of the February 2005 Rule is identical to the December 2002 Policy in that both limit the BOP's discretion to designate inmates to CCCs to the last ten percent of the prison sentence being served, not to exceed six months." <u>Baker</u>, 2005 WL 2276040, at *3. In other words, "[w]hereas the BOP had previously argued that Section 3624(b) prevented it from designating a CCC placement prior to the last ten percent of a prison term, the BOP's new position is that it does have the discretion to place an inmate in a CCC for all or any portion of the prison sentence, but has chosen to 'exercise its discretion categorically' and to decline to authorize CCC placement

for any prisoner prior to the last ten percent of his sentence." Lesnick v. Menifee, No. 05 Civ.4719 JCF, 2005 WL 2542908, at * 3 (S.D.N.Y. Oct. 11, 2005).

### B.    Application of the February 2005 Rules to Petitioner

The BOP relied on its new February 2005 Rules when it determined the date when Petitioner should be transferred to a CCC.  The BOP informed Petitioner that, pursuant to its new Rule, he was automatically ineligible for a transfer to a CCC until he reached the last ten percent of his sentence.  Petitioner contends that the BOP should not be allowed to rely on its new Rule to categorically deny CCC placement to all prisoners who have not reached the final ten percent of their sentences because the Rule contravenes the statutory directives of §§ 3621(b) and 3624(c).  This Court agrees.[6]

Since the adoption of the February 2005 Rules, many federal district courts have considered whether the Rules represent a permissible exercise of the BOP's statutory authority and responsibilities.  While several of those courts have upheld the BOP's new

---

[6] This Court rejects Petitioner's collateral estoppel argument that the prior decisions of McCrillis v. Sanders, No. 2:05CV00179 HDY, 2005 WL 2545285 (E.D. Ark. Oct. 7, 2005), and Jennings v. Sanders, No. 2:05CV00209 HDY, 2005 WL2589181 (E.D. Ark. Oct. 13, 2005), preclude the BOP from arguing that the February 2005 Rules are enforceable. (See Petitioner's Mem. at 7.)  This case presents an instance of "nonmutual offensive collateral estoppel;" that is, a case where Petitioner was not a party to the prior suit, but is seeking to foreclose Respondent from relitigating an issue Respondent previously litigated, and lost, in the prior suits.  Although the Supreme Court conditionally approved of the doctrine of nonmutual offensive collateral estoppel in Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), the Court expressly refused to extend that doctrine to application against the United States. See United States v. Mendoza, 464 U.S. 154, 158-62 (1984); see also, United States v. Gurley, 43 F.3d 1188, 1198 n.2 (8th Cir. 1994).  In reaching its decision, the Court in Mendoza concluded that because the nature of government litigation is substantially different from private litigation, applying nonmutual offensive collateral estoppel against the government would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular issue," and would force the government to abandon prudential concerns, such as limited government resources, and "appeal every adverse decision in order to avoid foreclosing further review." Mendoza, 464 U.S. at 160-61.  Indeed, these very same concerns are present in this case, as well.

Rule,[7] there appears to be about an equal number of courts that have found it to be invalid.[8] To date, the only federal appellate court that has considered this issue has found the February 2005 Rules to be invalid.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).

Virtually all of the courts that have considered the propriety of the BOP's February 2005 Rules on CCC placements have found guidance in the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230 (2001).  In Lopez, the Court considered whether the BOP had properly interpreted 18 U.S.C. § 3621(e)(2)(B), a statute that authorizes the BOP to grant sentence reductions to prisoners who participate in drug rehabilitation programs.  Section 3621(e)(2)(B) gives the option to, but does not require, the BOP of reducing a prisoner's sentence by up to one year if (a) he has been "convicted of a nonviolent offense," and (b) he successfully completes an approved drug rehabilitation program.

---

[7] See e.g., Yip v. Fed. Bureau of Prisons, 363 F.Supp.2d 548 (E.D.N.Y.2005); Moss v. Apker, 376 F.Supp.2d 416 (S.D.N.Y. 2005); Garcia v. Francis, No. Civ.A. H-06-0011, 2006 WL 126713 (S.D. Tex. Jan. 17, 2006); Montoya v. Rios, No. Civ.A. 05CV00606PSFP, 2005 WL 3271489 (D. Colo. Nov. 30, 2005); Brown v. Nash, No. Civ.A. 04-5614(JBS), 2005 WL 3216531 (D.N.J. Nov. 23, 2005); Eli v. Apker, No. 05 CIV. 2703(DC), 2005 WL 2848956 (S.D.N.Y. Oct. 28, 2005); Morales v. Francis, No. CIV.A. H-05-2955, 2005 WL 2467691 (S.D. Tex. Oct. 5, 2005); Charboneau v. Menifee, No. 05 Civ.1900(MBM), 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005); Hurley v. Sherrod, No. CIV.A 05CV01177LTBPAC, 2005 WL 2141490 (D. Colo. Sept. 1, 2005).

[8] See e.g., Pimentel v. Gonzales, 367 F.Supp.2d 365 (E.D.N.Y. 2005); United States v. Paige, 369 F.Supp.2d 1257 (D. Mont. 2005); Allen v. Fed. Bureau of Prisons, No. Civ. 05-4502FLW, 2006 WL 20527 (D.N.J. Jan. 3, 2006); Hayek v. Caraway, No. Civ.05-1424(PAM/JSM), 2005 WL 3334600 (D. Minn. Dec. 7, 2005); Jennings v. Sanders, No. 2:05CV00209 HDY, 2005 WL2589181 (E.D. Ark. Oct. 13, 2005); Lesnick v. Menifee, No. 05 Civ. 4719 JCF, 2005 WL 2542908 (S.D.N.Y. Oct. 11, 2005); Baker v. Willingham, No. 3:04CV1923(PCD), 2005 WL 2276040 (D. Conn. Sept. 19, 2005); Cook v. Gonzales, No. Civ. 05-09-AS, 2005 WL 773956 (D. Or. Apr. 5, 2005); Drew v. Menifee, No. 04 Civ. 9944HBP, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  In addition, within this District, as Respondent acknowledges, several judges and magistrate judges have invalidated The Feburary 2005 Rules.  (See Gov't Response at 2-3.)

Specifically, 18 U.S.C. § 3621(e)(2)(B) provides in relevant part:

> The period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program <u>may</u> be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must serve.

(Emphasis added).

Sometime after § 3621(e)(2)(B) was enacted, the BOP determined that if a prisoner had received an enhanced sentence because his offense involved possession of a firearm, then he had been convicted of a "violent offense" for purposes of § 3621(e)(2)(B), and he was therefore automatically ineligible for a reduced sentence under the statute. Many federal courts, including the Eighth Circuit Court of Appeals, rejected this interpretation of § 3621(e)(2)(B). <u>See</u> <u>Martin v. Gerlinski</u>, 133 F.3d 1076, 1079 (8th Cir. 1998) ("the inclusion of sentencing enhancement factors in the determination of what is a 'nonviolent offense' is not a permissible interpretation of the statute"). The BOP responded to these decisions by changing its rule. Under the BOP's revised rule, prisoners who received firearm enhancements were still automatically ineligible for sentence reductions. But instead of relying on its own interpretation of the statutory term "violent offense" to exclude such prisoners, the BOP relied on its broad statutory discretion under § 3621(e)(2)(B) to determine which non-violent offenders should be eligible for sentence reductions. Thus, under the BOP's revised rule, prisoners who had received firearm enhancements were categorically excluded from receiving a sentence reduction, "not because § 3621(e)(2)(B)

so mandates, but pursuant to the Bureau's asserted discretion to prescribe additional early release criteria." <u>Lopez</u>, 531 U.S. at 235-36.

In <u>Lopez</u>, the Supreme Court considered whether the BOP could properly exercise

its discretion under § 3621(e)(2)(B) in such a categorical fashion – i.e., by ruling that all prisoners who receive a sentence enhancement due to firearm possession are automatically excluded from consideration for a reduced sentence.  The Supreme Court upheld the BOP's categorical exclusion rule, stating:

> Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstances in which the Bureau either must grant the reduction, or is forbidden to do so.

Id. at 242.

The Court then held that "even if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  Id. at 243-244 (quoting American Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991) (internal quotation marks omitted)).

The BOP now contends that the February 2005 Rules must be treated the same as the sentence reduction regulation that was upheld by the Supreme Court in Lopez.  The BOP claims that its discretionary authority to make categorical CCC assignments under §§ 3621(b) and 3624(c) is just as unfettered as its authority to make categorical sentence-reduction decisions under § 3621(e)(2)(B). Those federal district courts that have accepted this assertion conclude that Lopez does indeed affirm the BOP's broad authority to exercise its congressionally-granted discretion by means of categorical rules.  In Yip, for example, the court stated that:

> [C]ontrary to petitioner's assertion, the BOP is authorized to create categorical rules even where a statute requires individualized determinations . . . .  In Lopez, the Supreme Court rejected a challenge to the BOP's creation of a categorical rule excluding certain inmates from a discretionary

> early release program.   There is no significant distinction
> between the situation in <u>Lopez</u> and the case at hand.   The
> BOP has identified a category of prisoners – inmates who are
> not yet required to be considered for transfer to a CCC under
> Section 3624(c), but are eligible under Section 3621(b) – and
> created a rule denying transfer to all of them, in conflict with no
> identified directive of Congress.   Thus, the court . . . concludes
> that there is no merit to petitioner's contention that the BOP
> was not authorized to create this type of categorical rule.

363 F.Supp.2d at 552.

The courts that have upheld the BOP's February 2005 Rules on CCC assignments have emphasized that the relevant federal statutes, (§§ 3621(b) and 3624(c)), like the statute at issue in <u>Lopez</u>, (§ 3621(e)(2)(B)), expressly grant broad discretionary authority to the BOP.   Those courts have pointed to Congress's use of the word "may," rather than "shall," in the applicable clause of § 3621(b) – <u>i.e.</u>, "[t]he Bureau <u>may</u> designate any available penal or correctional facility that meets minimum standards of health and habitability . . . ."  (Emphasis added).  In <u>Harris</u>, for example, the court explained:

> [T]he clause pertaining to the BOP's consideration of five
> factors in § 3621(b) is not preceded by the term "shall", but
> instead, employs the permissive term "may".   This Court
> declines to read a mandatory obligation into the text of
> § 3621(b) with respect to the BOP's discretionary consideration
> of the five factors when such an interpretation would render the
> word "may" meaningless.

2005 WL 2562970, at * 9.

The courts upholding the BOP's February 2005 Rules have further suggested that the legislative history of § 3621(b) provides additional support for the broad discretionary authority asserted by the BOP.   In <u>Harris</u> the court stated:

> [T]he Senate Judiciary Committee Report emphasizes that the
> Committee's listing of factors [in § 3621(b)] for the BOP's
> consideration in determining the appropriateness of a facility
> for placement or transfer "does not intend to restrict or limit the
> Bureau in the exercise of its existing discretion so long as the

> facility meets the minimum standards of health and habitability
> of the Bureau . . ."

Id. at *10 (quoting S.Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3325).

This Court obviously recognizes the precedential significance of Lopez, and appreciates that Lopez approved the use of categorical decision-making rules by the BOP under the circumstances presented in that case.  However, for the reasons discussed below, this Court respectfully disagrees with the courts that have upheld the February 2005 Rules, and instead joins those courts that have found the Rules to be an impermissible exercise of the BOP's discretion.

### 1.    The statute in Lopez did not include a specific list of factors

This case is distinguishable from Lopez because § 3621(b) limits the BOP's discretion in ways that § 3621(e)(2)(B), the statute at issue in Lopez, does not.  Section 3621(b) lists the following five specific criteria that the BOP is required to consider when making prison housing assignments, including CCC home confinement assignments:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In contrast, the statute at issue in Lopez did not include any list of factors comparable to the list set forth in § 3621(b).  Rather, § 3621(e)(2)(B) allows the BOP, without any limit or even guidance from Congress, to decide which non-violent offenders who complete a drug rehabilitation program should get sentence reductions.

Consequently, the BOP elected to exercise that discretion in a categorical fashion, and the Supreme Court upheld that approach, emphasizing that there was nothing in § 3621(e)(2)(B) that suggested there is any need to make "individualized determinations." Lopez, 531 U.S. at 241-42.

Here however, the language of § 3621(b) expressly prescribes five specific criteria that are to be used in making housing decisions, including CCC assignments. Several of those criteria cannot be applied in a categorical fashion; rather they require some consideration of a prisoner's individual circumstances, lending support to the conclusion that the BOP is required to make individualized determinations of a prisoner's eligibility for CCC placement. Three of the statutory criteria are particularly noteworthy – "the nature of the circumstances of the offense," "the history and characteristics of the prisoner," and "any [relevant] statement by the court that imposed the sentence." These three criteria, which Congress has explicitly directed the BOP to consider when making prison assignments, cannot be applied in a categorical fashion; they necessarily require consideration of a prisoner's individual circumstances.

Thus, this Court concludes that the statute at issue here, unlike the statute in Lopez, includes Congressional direction to the BOP, which constrains the exercise of the BOP's discretion with regard to housing assignments and cannot be disregarded. Furthermore, several of the criteria listed in the statute cannot be applied in a general fashion; they can only be applied individually. As the court observed in Pimentel:

> In Lopez, the statute denying early release eligibility to violent offenders manifested congressional concerns for preconviction behavior that suggested a propensity for violence and a corresponding risk to the public. BOP's determination to extend the class of inmates ineligible for early release to inmates who possessed a firearm in connection with their nonviolent offenses addressed these same concerns. See

> Lopez, 531 U.S. at 244, 121 S.Ct. 714. Here, rather than merely delineate the boundaries of its discretion consistent with congressional intent as in Lopez, the February 2005 Rule removes all discretion in all cases in determining whether to transfer an inmate to a CCC at any time prior to the last ten percent of the inmate's sentence. While BOP has the authority to clarify the contours of its discretionary authority as it relates to certain classes of issues, this court is unconvinced that BOP may categorically remove its entire ability to exercise its discretion, where, as here, the enabling statute provides specific factors relevant to whether CCC placement may be appropriate prior to the last ten percent of a prisoner's sentence.
>
> * * *
>
> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the rule promulgated in Lopez, the February 2005 Rule in no way furthers or interprets these factors. Instead, it disregards them.

Pimentel, 367 F.Supp.2d at 374-75.

The Court finds that the BOP's February 2005 Rules, which make an across-the-board determination that no prisoner will ever be assigned to a CCC before reaching the last ten percent of his sentence, constitute an impermissible implementation of the discretion that Congress has vested in the BOP.  In sum, individual determinations are required by § 3621(b).  Lopez therefore does not control.  "While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated."  Woodall, 432 F.3d at 247.

### 2.   Legislative history does not support the position of the BOP

Respondent contends that the legislative history of § 3621(b) demonstrates that the BOP's treatment of the factors as discretionary is "consistent with Congress's intent in enacting § 3621(b)."  (Gov't Response at 8.)  Several courts that have examined the February 2005 Rules have looked to the legislative history of § 3621(b) for guidance.  In this regard, Senate Judiciary Committee, S.Rep. No. 98-225, reprinted in 1984

U.S.C.C.A.N. 3182, 3324-25, includes the following explanation of the statute:

>Proposed 18 U.S.C. 3621(b) follows existing law [footnote omitted] in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons.   [Footnote omitted.] The designated penal or correctional facility need not be in the judicial district in which the prisoner was convicted and need not be maintained by the federal government.   Existing law provides that the Bureau may designate a place of confinement that is available, appropriate, and suitable.   <u>Section 3621(b) continues that discretionary authority with a new requirement that the facility meet minimum standards of health and habitability established by the Bureau of Prisons.  In determining the availability or suitability of the facility selected, the Bureau i[s] specifically required to consider such factors as</u> the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case, [footnote omitted] any recommendations as to type of facility made by the court, and any pertinent policy statements issued by the sentencing commission pursuant to proposed 28 U.S.C. 994(a)(2).  <u>After considering these factors</u>, the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility, or may transfer the offender to another appropriate facility.

>In the absence of unusual circumstances, federal courts currently will not review a decision as to the place of confinement.  [Footnote omitted.] The Committee, <u>by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the Bureau in the exercise of its existing discretion</u> so long as the facility meets the minimum standards of health and habitability of the Bureau, <u>but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations</u>.   (Emphasis added).

Those courts that have invalidated the February 2005 Rules have found that the Senate Report shows a clear congressional intent to limit the BOP's housing assignment

discretion.  Pimentel, 367 F.Supp.2d at 375; Drew, 2005 WL 525449, at *4; Lesnick, 2005 WL 2542908, at *6-7.  This Court agrees.  Read in its entirety, the Senate Report indicates that while Congress intended for the BOP to retain broad discretion in making prisoner housing assignments, Congress also expected the BOP to consider the five factors listed in the statute when exercising such discretion.  The Senate Report certainly does not indicate, as Respondent suggests, that the five factors listed in § 3621(b) are purely optional, and can be totally ignored by the BOP if it so chooses.  To the contrary, "[s]ection 3621(b) requires more than having the ability to consider the factors; it expressly requires that the BOP in fact consider them."  Hayek, 2005 WL 3334600, at *3.

### 3.   Deference to the BOP

Citing to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), Respondent argues that, as the agency charged with administering both 18 U.S.C § 3624(c) and 18 U.S.C § 3621(b), the BOP's interpretation of these statutes, as codified in the February 2005 Rules, is entitled to deference.  (See Gov't Response at 4.) Under Chevron, the statute must first be examined to determine whether Congress has spoken to the precise question at issue.  If indeed, "the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.  If on the other hand, the intent of Congress is not clear on the face of the statute, the question becomes whether the agency's interpretation is based on a permissible construction of the statute.  Id. at 843.  That is, "[o]nly 'if the statute is silent or ambiguous with respect to the specific issue' will the Court address 'whether the agency's answer is based on a permissible construction of the statute.'"  Hayek, 2005 WL 3334600, at *4 (quoting Chevron, 467 U.S. at 843).  And then, even under those circumstances, the legislative

regulations will prevail only if they are not found to be "arbitrary, capricious, or manifestly contrary to the statute."  Chevron 467 U.S. at 844.

Respondent's Chevron argument fails for three reasons.  First, the underlying premise of Respondent's argument that the BOP's regulations must be given deference under Chevron is that, while 18 U.S.C. § 3624(c) is unambiguous, § 3621(b) is silent on the issue of whether the BOP must make all facility designation decisions on a case-by-case basis or whether it may instead exercise its designation discretion categorically.  (See Gov't Response at 6.)  The problem with Respondent's reasoning is that its description of what the statute must include to be clear and unambiguous is flawed.  The issue is not whether Congress has stated whether facility designation decisions may be made on a case-by-case basis, or whether the BOP may instead exercise its designation discretion categorically; rather, the question is whether Congress clearly expressed those factors that the BOP must consider when it exercises its discretion in making prison placements, or whether Congress was silent on this issue, leaving it to the BOP to develop the factors.

Second, as discussed above, this Court has concluded that Congress did clearly express those factors that the BOP must consider when making prison placements.  The plain language of § 3621(b) requires the BOP to consider all five factors in the statute when making an individualized determination of a prisoner's place of imprisonment.  See Woodall, 432 F.3d at 249; see also, Hayek, 2005 WL 3334600, at *4 ("Section 3621(b) clearly requires the BOP to consider all five factors when making the individualized determination of a prisoner's place of imprisonment – whether that be in prison or in a

community confinement center.")  As a result, having spoken on the issue, the BOP's interpretation of the statute is not required and is entitled to no deference.

Third, even assuming *arguendo* that § 3621(b) is ambiguous, the BOP's interpretation of the statute – which categorically ignores certain factors delineated in the statute – is not a permissible construction of the statute.  As the Third Circuit stated:

> "Even for an agency able to claim all the authority possible under Chevron, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys. v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004).  Here, we are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable.

Woodall, 432 F.3d at 248-49.

While clearly § 3621(b) arms the BOP with broad discretion in its ultimate placement of prisoners, that discretion must be consistent with and give effect to all, and not just some, portions of the statute.  Having failed to include all five factors in its February 2005 Rules, the BOP's exercise of discretion, this Court concludes, was arbitrary and capricious and cannot be upheld.  See Hayek, 2005 WL 3334600, at *4.

## III.    CONCLUSION

For the reasons discussed above, the Court concludes that the BOP cannot rely on its February 2005 Rules, (28 C.F.R. §§ 570.20 and .21), to categorically exclude all federal prisoners from being assigned to CCCs until they reach the last ten percent of their sentence to be served.  The Eighth Circuit Court of Appeals has already ruled that neither § 3621(b) nor § 3624(c) precludes prisoners from being assigned to CCCs at any time. Elwood, 386 F.3d at 846-47.  This Court now finds that § 3621(b) requires the BOP to consider the five factors listed in the statute when deciding whether, and when, a prisoner should be assigned to a CCC or comparable housing arrangement.  The February 2005

Rules cause such decisions to be made without any regard to several of the factors listed in the statute.  Therefore, the Rules contravene the statute.

Because the February 2005 Rules do not follow the statute, the Court finds that the BOP could not properly use the Rules to automatically bar Petitioner from a CCC assignment before he reaches the last ten percent of his sentence.  The BOP should be required to reconsider its decision about when Petitioner should be assigned to a CCC, without regard to the categorical directive of the February 2005 Rules.  Of course, the BOP will continue to have broad discretion to decide whether and when Petitioner should be assigned to a CCC, but that discretion must be exercised based on the factors prescribed in § 3621(b), rather than the absolute mandate prescribed by the February 2005 Rules.

Accordingly, the Court recommends that Petitioner be granted a writ of habeas corpus that directs the BOP to immediately reconsider the date when Petitioner should be assigned to a CCC in light of the criteria set forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and .21.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

The Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docket No. 1), be GRANTED, and that Respondent be directed to immediately reconsider the date when Petitioner should be assigned to a CCC in light of the criteria set forth in 18 U.S.C. § 3621(b) and without regard to 28 C.F.R. §§ 570.20 and .21.  In this regard, in the event that the District Court issues an order adopting this Report and Recommendation, Respondent's decision shall be filed with the Court within twenty-one (21) days of the filing of that Order.

Dated:  March 2, 2006

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 20, 2006**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.